FIRST STATE BANK OF TEAGUE et al. v.
HADDEN et al.

(Court of Civil Appeals of Texas. Dallas.
May 31, 1913. Rehearing Denied
June 21, 1913.)

1. CORPORATIONS (§ 672*)—FOREIGN CORPORA-
TIONS—RIGHT TO SUE—OBJECTIONS.

Where the petition in an action by a for-
eign corporation alleges facts showing an intra-
state transaction, and does not state that it has
a permit to transact business in the state, the
issue of its right to do business in the state
may be raised by exception.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 2645–2649; Dec. Dig. § 672.*]

2. CORPORATIONS (§ 672*) — FOREIGN CORPO-
RATIONS—RIGHT TO SUE—OBJECTIONS.

Where the petition in an action by a for-
eign corporation fails to disclose the character
of the transaction sued on, and does not al-
lege that it has a permit to transact business in
the state, the issue of its right to do business
in the state may be raised by appropriate plead-
ing and proof.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 2645–2649; Dec. Dig. § 672.*]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS
(§ 307*)—CLAIMS — ESTABLISHMENT — AC-
TIONS.

Rev. Civ. St. 1911, art. 102, providing for
the allowance by the assignee for creditors of
verified claims unless contested by a creditor
who may sue to set aside the allowance, relates
solely to cases where a creditor contests the
validity of another consenting creditor's claim,
and does not apply to a creditor asserting the
validity of a claim disallowed by the assignee.

[Ed. Note.—For other cases, see Assignments
for Benefit of Creditors, Cent. Dig. §§ 893–899;
Dec. Dig. § 307.*]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS
(§ 44*) — CONSENT TO ASSIGNMENT — ACTS
CONSTITUTING.

Where a creditor of a debtor making a
statutory general assignment filed its claim with
the assignee within four months after notice,
and attached to the claim a letter from it ad-
dressed to its attorney, stating, "You are au-
thorized to file claim with assignee and accept
whatever it may pay," the creditor sufficiently
accepted the assignment in writing within Rev.
Civ. St. 1911, art. 95.

[Ed. Note.—For other cases, see Assignments
for Benefit of Creditors, Cent. Dig. §§ 198–207;
Dec. Dig. § 44.*]

5. ASSIGNMENTS FOR BENEFIT OF CREDITORS
(§ 44*) — CONSENT TO ASSIGNMENT — ACTS
CONSTITUTING.

Where a creditor filed his claim with the
assignee within the four months, and inclosed
the claim in a letter from its authorized attor-
ney to the assignee which recited, "Please file
this account and advise when we can expect
payment," he accepted the assignment.

[Ed. Note.—For other cases, see Assignments
for Benefit of Creditors, Cent. Dig. §§ 198–207;
Dec. Dig. § 44.*]

6. ASSIGNMENTS FOR BENEFIT OF CREDITORS
§ 44*)—ACCEPTANCE OF ASSIGNMENT—WAIV-
ER.

Where an assignee in a statutory general
assignment for creditors received claims of cred-
itors, and allowed the same, and made the no-
tation thereon that the claims were allowed sub-
ject to statutory acceptance, but did not re-
turn them to the creditors or notify them of
the memorandum made thereon, he waived writ-

ten acceptance by the creditors as required by
Rev. Civ. St. 1911, art. 95.

[Ed. Note.—For other cases, see Assignments
for Benefit of Creditors, Cent. Dig. §§ 198–207;
Dec. Dig. § 44.*]

7. ASSIGNMENTS FOR BENEFIT OF CREDITORS
(§ 302*)—CLAIMS—PROOF OF CLAIMS—REQ-
UISITES—"TRUE."

An affidavit by a creditor of a debtor mak-
ing a statutory general assignment for cred-
itors which avers that the statement is true, and
that the debt is just, is sufficient within the
statute providing that the affidavit shall aver
that the claim is just and correct, where the
claim was based on a promissory note of the
assignor, the word "true" meaning conformable
to truth, free from error, accurate, conformable
to fact, not false.

[Ed. Note.—For other cases, see Assignments
for Benefit of Creditors, Cent. Dig. § 888; Dec.
Dig. § 302.*

For other definitions, see Words and Phrases,
vol. 8, pp. 7113, 7114.]

Error to District Court, Freestone County;
H. B. Daviss, Judge.

Action by F. M. Hadden and others against
W. A. Mixon, assignee of E. H. Robinson, in
which the First State Bank of Teague and
others became parties. There was a judg-
ment establishing the claims of various credi-
tors, and the First State Bank of Teague
brings error. Affirmed.

D. T. Garth, of Teague, for plaintiff in er-
ror. Baker, Botts, Parker & Garwood, of
Houston, and W. E. Terrell, of Teague, for
defendants in error.

RASBURY, J. Defendants in error on
January 13, 1911, instituted suit in the court
below against W. A. Mixon, alleging, in sub-
stance, that Mixon was the qualified assignee
of one E. H. Robinson, a former merchant
of Teague, Tex., acting under authority of a
statutory general assignment dated July 16,
1910, and in possession of the property and
estate of said Robinson conveyed by said as-
signment for pro rata distribution among all
consenting creditors. Defendants in error
averred acceptance of the assignment, a
waiver of written notice thereof by the as-
signee, and a filing of their respective claims
properly verified with the assignee within
four months after publication by the assignee
of notice of his appointment; also, that their
claims were retained by said assignee until
about January 11, 1911, when same were re-
turned to defendants in error with the infor-
mation that the assignee would not pay
them. Further, it was shown that no distri-
bution of the assets of the estate had been
made at the time of filing suit, but that the
assignee was about to do so without paying
defendants in error their pro rata portion of
the same. Temporary restraining order was
asked against the assignee requiring him to
retain the assets of the estate intact pending
further orders of court. Judgment estab-
lishing their claims against the fund in the
hand of the assignee, and that he be required

to allow and pay pro rata the claims of defendants in error, along with all other lawful claims against said estate, was prayed for. A number of creditors were brought into the controversy in various ways, but of them only First State Bank of Teague and Stauffer, Eshleman & Co., and Peden Iron & Steel Company, defendants in error, are parties to the appeal. On trial in the court below plaintiff in error, First State Bank of Teague, a creditor whose claim had been allowed, opposed the relief sought by the defendants in error Stauffer, Eshleman & Co. and Peden Iron & Steel Company, whose claims had been rejected. The defenses of plaintiff in error to the relief sought by defendants in error will appear clearly by the assignments of error, and any facts arising thereon will be related in disposing of such assignments, since the facts as such are practically undisputed. In the court below judgment was for defendants in error Stauffer, Eshleman & Co. and Peden Iron & Steel Company, establishing their claims, and awarding them their pro rata share in the distribution of the estate. The First State Bank of Teague alone appealed.

[1, 2] The first proposition advanced is that defendant in error Stauffer, Eshleman & Co. was not entitled to maintain its suit, because, being a foreign corporation, it failed to allege in its petition and prove upon trial of the case either that it had a permit from the state of Texas to transact its business within the state or that the transaction with E. H. Robinson, the assignor, upon which its claim arose, was interstate commerce. Bearing upon this issue, the petition alleged that said Stauffer, Eshleman & Co. were incorporated under the laws of the state of Louisiana, and that the assignor Robinson was indebted to it for $358. The petition contains no averments by which it can be determined whether the business between the parties was either interstate or intrastate transactions. The plaintiff in error's brief fails to show any pleading or proof on its part in the court below asserting affirmatively that the debt sued upon represented an intrastate transaction, and that a permit from the state was necessary to lawfully conduct same. Thus it will be seen that the question is not raised, and hence the proposition cannot be sustained. If the petition, as a whole, had alleged a group of facts showing an intrastate transaction, the issue could have been raised by exception. Or the petition failing to disclose the character of the transaction plaintiff in error could have raised the issue by appropriate pleading and proof. Geiser Manufacturing Co. v. Gray, 126 S. W. 610; Panhandle Telephone & Telegraph Co. v. Kellogg, S. & S. Co., 132 S. W. 963; New State Land Co. v. Wilson et al., 150 S. W. 253.

[3] The next proposition is that the court erred in allowing the claim of Stauffer, Esh-

leman & Co. and Peden Iron & Steel Company, and directing their pro rata payment, for the reason that the assignee having allowed certain other uncontested claims, not necessary to enumerate, and rejected the claims of said defendants in error, it was the duty of defendants in error to proceed under the statute to set aside the allowed claims rather than to enforce by suit an allowance of their claims, and cites article 102, R. S. 1911, to sustain its contention. As argued by counsel for defendants in error that article has, in our opinion, no application to suits to require allowance of claims by assignees. That article of the act obviously relates solely to cases where one creditor contests the validity or justness of another consenting creditor's claim. Defendants in error's suit does not question the validity of the claims of the other creditors, nor the action of the assignee in allowing same, but, on the contrary, asserts that defendants in error also have valid claims against the assignor which have been presented to the assignee properly verified, but which he refuses to allow and pay, and asks that the plaintiff in error be compelled to perform his duty. The petition states a good cause of action, and the proceeding is proper, and is in no sense controlled by the article cited.

[4-6] The next proposition advanced is that the court erred in allowing the claims of Stauffer, Eshleman & Co. and Peden Iron & Steel Company and directing their pro rata payment, for the reason that both said creditors failed, within four months after notice of the assignment, to file with the assignee their consent in writing thereto as provided by article 95, R. S. 1911. In connection with this proposition, the facts are that Robinson executed the assignment July 17, 1910, naming Mixon as assignee. Notice of the assignment was published August 12th, 19th, and 26th, in the Teague Chronicle. In addition personal notice was mailed to both defendants in error a few days after the execution of the deed of assignment. Stauffer, Eshleman & Co. filed its claim with the assignee October 5, 1910, and attached to the claim and a part thereof was a letter from it addressed to its attorney, stating, among other things: "You are authorized to file claim with assignee and accept whatever it may pay." The Peden Iron & Steel Company filed its claim with the assignee November 25, 1911. The claim was inclosed in a letter from its authorized attorney to the assignee, which, among other things, recited: "Please file this account and advise when we can expect payment." The filing of the claims and the quotations from the letters above is all the evidence bearing upon an acceptance of the assignment. The assignee on receiving the claim and allowing same made the notation thereon that the claims were allowed subject to statutory acceptance, but did not return them to creditors or notify them of

the memorandum made thereon. He refused to pay the claims, among other reasons, because there had been no acceptance in writing of the assignment by the defendants in error. Article 95, R. S. 1911, provides, in substance, that creditors shall accept the assignment in writing within four months after the prescribed notice, and that those not assenting shall take nothing under the assignment. We are of opinion, however, that the related facts show a compliance with the statute, as well as a waiver of the written acceptance by the assignee. Stauffer, Eshleman & Co. in terms almost complied with the provisions of the statute, since the letter attached to its claim recites, "You are authorized to file claim with assignee and accept whatever it may pay." The purpose of the acceptance is to bind the creditor to release the debtor in the event his pro rata part aggregates as much as one-third of his claim (article 93, R. S. 1911), and his agreement to "accept whatever it (the assignment) may pay" so clearly indicates his intention to accept the same as to leave no room for doubt or construction. With reference to the claim of the Peden Iron & Steel Company we are of opinion that it comes well within the rule stated in Sanborn & Warren v. Norton & Dentz, 59 Tex. 308. It is there said: "By coming in under a voluntary assignment the creditors express their election to accept of its provisions and are considered as acquiescing in the disposition directed by the assignor to be made of the proceeds of the property."

Accordingly, the filing of its claim by Peden Iron & Steel Company was in law an acceptance of the assignment, and by so doing it is bound by all the provisions of the act. In the case cited, it is further said that the act does not make consent of any character other than in writing invalid, since it only provides that those not consenting at all shall be denied participation in the funds, but does not expressly exclude those assenting otherwise than in writing. Further, it seems to us that the letter written by the authorized attorney of the Peden Iron & Steel Company is in effect an acceptance in writing sufficient under the statute. While the letter does not in precise terms say that the creditor accepts and agrees to be bound by the assignment, yet its intention is so clear in that behalf as not to be misunderstood. The assignee is told by the letter to file the claim and to advise the creditor when payment of the claim may be expected. Thus we have in writing that from which it can be easily deduced that the creditor assents to the assignment, and wishes to come within its provisions. Finally, we conclude that the conduct of the assignee as disclosed by the record shows a waiver by him of written acceptance. In the case just cited it is said: "The design of the statute was to compel the creditor to give notice of his acceptance, but to allow the assignee to waive written notice,

provided the claim itself was duly filed, so that it could be taken into consideration in marshaling the debts due from the estate. The assignee is not compelled to allow any other but written notice; but, if he makes no objection and files the verified claim, we do not think that the claimant can object to being ranked among the accepting creditors of the estate." Applying the above rule to the instant case, the presumption is that the assignee intended to waive written consent by defendants in error and receiving no objection from assignee to the claim as filed defendants in error were entitled to receive their pro rata portion of the estate. While the statement involves no reflection upon the assignee, any other rule would prevent an equal distribution of the assignor's estate for which the act was obviously intended.

[7] The next assignment of error is that the claim of Peden Iron & Steel Company should not have been allowed for the reason that same was not properly verified. The statute provides, among other things, that there shall be included in the affidavit the recital "that the statement is true; that the debt is just." The affidavit of the Peden Iron & Steel Company contained all the statutory essentials, other than the words just quoted, and in lieu thereof the affidavit stated "that the * * * notes * * * are just and correct." The claim being based upon the promissory notes of the assignor, it was obviously impossible to say that the "statement" was true, and hence it was correct to refer to the notes rather than the statement. Thus the question is: Is the use of the terms "just and correct" substantially the same as "true and just"? In the case of Hughes v. Potts, 39 Tex. Civ. App. 179, 87 S. W. 708, this court held that an affidavit under the general assignment statute must at least be in substantial compliance with article 93, R. S. 1911, and that an affidavit which merely stated that the attached account was "correct" was not in substantial compliance with the article. It was there said that the account might be correct, and yet the debt not just, and that "correct" was not the equivalent of just and true. In the present case we have the statement that the debt is both correct and just, and since the word "just" is one of the words used in the statute, and since "correct" and "true" are practically synonymus in meaning, it occurs to us that there has in this case been a substantial compliance with the statute. "True," as defined by the Century Dictionary, means, "conformable to truth, free from error, accurate." The same authority defines "correct" as meaning, "conformable to fact, not false, accurate." Accordingly we think the use of the word correct instead of true in the affidavit is in substantial compliance with the statute since the meaning of the words is nearly identical.

Finding no reversible error in the record, the judgment is affirmed.